IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2026

**SHAMARION J. BROWN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-25-109        Joseph T. Howell, Judge**

_____

**No. W2025-01444-CCA-R3-PC**
_____

Petitioner, Shamarion Bown, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in concluding that Petitioner received the effective assistance of counsel. Petitioner alleges that trial counsel failed to adequately review discovery materials and offer an honest assessment about the strengths and weaknesses of Petitioner's case. Petitioner contends that because of counsel's alleged deficient performance he did not fully understand the nature and consequences of his guilty plea. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Samuel Hinson, Lexington, Tennessee, for the appellant, Shamarion J. Brown.

Jonathan Skrmetti, Attorney General and Reporter; Kelly M. Telfeyan, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Lee Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This appeal arises from the post-conviction court's denial of relief for Petitioner's convictions of incest and rape of a child.

**Factual and Procedural Background**

Following a transfer from juvenile court, the Madison County Grand Jury charged Petitioner by indictment with rape of a child and incest. The trial court appointed trial counsel ("Counsel") to represent him. Following negotiations, Petitioner agreed to plead

guilty as charged in exchange for the minimum sentence of twenty-five years for rape of a child to be served at 100 percent, and a concurrent five-year sentence for incest. After informing Petitioner of his right to a jury trial and satisfying itself that Petitioner understood the nature and consequences of his guilty pleas, the trial court accepted the plea agreement. Although Petitioner stipulated to the facts underlying the indictment at his plea hearing, the State did not recite those facts on the record, and neither the indictments nor the plea documents are included in the appellate record. Thus, our review of the facts in this case is necessarily limited to those facts testified to during the post-conviction hearing. From the record before us, we note that Petitioner was a minor when he committed these offenses, but he was an adult at the time he pleaded guilty.

Petitioner timely filed a petition for post-conviction relief, seeking to set aside his guilty pleas on grounds that he did not receive the effective assistance of counsel. Relevant to this appeal, Petitioner alleged that Counsel failed to adequately review discovery materials with him and communicate the strengths and weaknesses of Petitioner's case. Petitioner argued that because of Counsel's deficient performance, he entered his guilty pleas "without understanding . . . the nature or consequences of the plea." The post-conviction court held an evidentiary hearing in August 2025, at which Petitioner and Counsel were the only two witnesses.

Petitioner testified that Counsel did not meet with him very often prior to the plea hearing and "rushed" him into the guilty pleas. He testified that Counsel provided the discovery materials to him but never reviewed the materials with him. Based on his own review of the discovery materials, Petitioner's main concern was that there was no DNA evidence tying him to the offenses. He claimed that certain information was never disclosed to him, but he never testified what that information was. He further claimed that because Counsel never reviewed the discovery materials with him, he was left with no other option than to plead guilty. When asked if he wanted to plead guilty, he responded, "No, sir. I really wanted to take it to trial, but [Counsel] said if I take it to trial, I'm going to end up getting forty years." After pleading guilty, he asked Counsel to move to withdraw his guilty pleas, but Counsel never filed a motion to that effect. He testified that Counsel "wasn't really actually helping me on my case." Finally, he testified that he did not "fully understand" what was happening at his plea hearing, although he never specifically identified which parts of the plea process that he failed to understand. Petitioner emphasized that if he had a full understanding at his plea hearing, he would never have pleaded guilty.

Counsel testified that his primary practice area had been criminal defense since he was admitted to the bar in 2008. Because Petitioner was a juvenile at the time of the offense, Counsel said that he "took special precautions with this case" and reviewed the discovery materials with Petitioner "several times." He went as far as to have the Chief

Public Defender meet with Petitioner regarding the evidence against him so there were "two people there to . . . explain to [Petitioner] the possible consequences of going to trial and if he lost at trial." Counsel advised Petitioner that he believed Petitioner would be convicted if he proceeded to trial because the potential testimony of the eyewitness and the minor victim would be "pretty damning proof." Counsel testified that after the meeting with the Chief Public Defender, Petitioner took time to think about the offer. A court date was set for the plea submission hearing. On the day of the hearing, Petitioner had not given Counsel an answer about the offer, even though Counsel had "messaged with [Petitioner] back and forth about whether or not he was going to take the offer or set it for trial." He testified that Petitioner decided to plead guilty the morning of the plea hearing but that had Petitioner declined, Counsel would have "absolutely" set the case for trial. He further said he saw no indication that Petitioner did not understand what he was doing by entering the guilty pleas. As Counsel put it, "[i]f [Petitioner] didn't understand it, it was not for our lack of trying." Counsel agreed that Petitioner eventually spoke to him about withdrawing his pleas, but the time for filing that motion had already passed.

Following the evidentiary hearing, the post-conviction court found that it had "questioned [Petitioner] extensively under oath" at the plea hearing and that Petitioner had not given any indication that he did not understand what he was doing or that he was dissatisfied with Counsel's representation. The court found that Petitioner was advised of all his rights prior to entering his guilty pleas. The court accredited the testimony of Counsel that he reviewed the discovery materials with Petitioner several times and that it was in Petitioner's best interest to plead guilty given the evidence against him. The court also accredited Counsel's testimony that Petitioner's request to withdraw his guilty pleas was outside the time he could have moved to withdraw them and found that Petitioner failed to establish by clear and convincing evidence that there was a legal basis to withdraw the pleas. The post-conviction court denied relief, concluding that Counsel provided effective and competent representation and that Petitioner failed to provide clear and convincing evidence establishing any prejudice caused by Counsel's perceived errors. This appeal followed.

**Analysis**

On appeal, Petitioner claims that the post-conviction court erred in denying post-conviction relief, arguing that Counsel performed deficiently by failing to "adequately review discovery and communicate honestly about the strengths/weaknesses of his case," which "left [him] with an incomplete understanding of the nature of his case," and asserting that he "likely would not have entered his pleas had [Counsel] adequately reviewed discovery with him." The State argues that the post-conviction court properly denied relief because Petitioner failed to show that Counsel was deficient or that Counsel's alleged deficiencies caused him prejudice. We agree with the State.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them, *see Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997), but the court's conclusions of law receive no deference or presumption of correctness on appeal, *see Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Both our state and federal Constitutions guarantee the right to effective assistance of counsel. *See* U.S. Const. amend. VI; Tenn. Const. art. 1, § 9. Thus, the denial of effective assistance of counsel is a cognizable claim under our Post-Conviction Procedure Act. *See Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022). When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," and "the petitioner bears the burden of overcoming this presumption." *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation modified). To meet this burden, a petitioner must clearly and convincingly establish facts to support a conclusion that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). To do so, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.263, 370 (Tenn. 1996). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When, as here, the petitioner challenges a guilty plea via an ineffective assistance of counsel claim, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Calvert v. State*, 342 S.W.3d 477, 485-86 (Tenn. 2011); *Hicks*, 983 S.W.2d at 246.

Here, the post-conviction court found that Counsel provided competent representation to Petitioner during the plea process and that Petitioner failed to prove by clear and convincing evidence that he was prejudiced in any way. We agree with the post-conviction court on both grounds.

As to Counsel's performance, the record supports the post-conviction court's conclusion that Counsel did not perform deficiently. The only evidence offered by Petitioner to show that Counsel's performance fell below prevailing professional norms comes from his self-serving assertions that Counsel failed to review discovery materials with him and communicate the strengths and weaknesses of his case. Counsel's testimony directly contradicted Petitioner's testimony, and the post-conviction court accredited Counsel's testimony over Petitioner's version of events. The court accepted counsel's testimony that Counsel met with Petitioner on multiple occasions, reviewed the discovery materials with Petitioner, and had the Chief Public Defender meet with Petitioner to discuss the case. The post-conviction court reviewed the transcript of the guilty plea submission hearing and found that Petitioner was advised of all his rights and the details of the plea agreement, including the sentence to be imposed. When asked during the plea colloquy whether he was satisfied with his attorney's representation in this case, Petitioner replied, "Yes, sir." The post-conviction court found that the trial court questioned Petitioner "extensively under oath," advising him that he could stop the proceedings and ask questions of the court, Counsel, or the district attorney general at any point. Yet, Petitioner never asked any questions or indicated that he did not understand the proceedings. Accordingly, we conclude that the record supports the post-conviction court's factual findings and its determination that Counsel's performance fell within the "the range of competence demanded of attorneys in criminal cases." *Baxter*, 523 S.W.2d at 936.

As to prejudice, the record contains no evidence that indicates Petitioner had anything less than a full understanding of his plea agreement. Petitioner failed to identify in both his testimony and his briefing the specific part of the plea process that he did not understand. When asked during the plea colloquy, "Do you feel like you fully understand what you're doing?" Petitioner responded, "Yes, sir." Moreover, the crux of Petitioner's testimony at the post-conviction hearing was that he felt "rushed" into pleading guilty when he wanted to go to trial. However, the record reflects that the trial court gave Petitioner the opportunity to ask questions and when asked if anyone had "threatened, forced, or coerced" him into pleading guilty, Petitioner responded, "No, sir." Petitioner's sworn statements create "a formidable barrier in any subsequent collateral proceedings" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see Transou v. State*, No. W2022-00172-CCA-R3-PC, 2022 WL 8047703, at *9 (Tenn. Crim. App. Oct. 14, 2022). Petitioner has not overcome this barrier. Accordingly, nothing in the record suggests "a reasonable probability that, but for

- 5 -

counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Grindstaff v. State*, 297 S.W.3d 208, 216-17 (Tenn. 2009).

## Conclusion

Based upon the foregoing, we affirm the judgments of the post-conviction court.


S/Matthew J. Wilson

_____
MATTHEW J. WILSON, JUDGE